# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| ELIZABETH RASSI, | ) |
|     Plaintiff, | ) ) ) |
| v. | ) ) Civil No. 1:12-cv-00354 |
| FEDERAL PROGRAM INTEGRATORS, LLC, and PENOBSCOT INDIAN NATION ENTERPRISES, | ) ) ) ) ) |
|     Defendants. | ) |

### ORDER ON THE DEFENDANTS' MOTION TO DISMISS, OR, IN THE ALTERNATIVE, TO STAY PENDING RESOLUTION BY THE TRIBAL COURT

This matter is before the court on the defendants' motion to dismiss the Third Amended Complaint (ECF No. 30) without prejudice, or, in the alternative, to stay the case in order for the Penobscot Nation Tribal Court (the "tribal court") to determine whether it has jurisdiction over the Plaintiff's claims and remedies. For the reasons discussed below, I conclude that the case should be stayed pending the tribal court's determination of its jurisdiction over the case, and if such jurisdiction is found, pending the tribal court's adjudication of the case on the merits.

## I. FACTUAL BACKGROUND

Penobscot Indian Nation Enterprises ("PINE") is a federally-chartered corporation located on Indian Island, Maine, established in accordance with § 17 of the Indian Reorganization Act ("IRA"), 25 U.S.C. § 477. ECF No. 33 at 2. Among the activities permitted by PINE's federal charter is the power to form "subsidiaries,

corporations, [and] limited liability corporations" which enjoy the same rights and privileges that PINE enjoys pursuant to its charter. ECF No. 33-1 at 11.

In 2008, PINE formed co-defendant Federal Program Integrators, LLC ("FPI"), as a Maine LLC and became its sole member. ECF No. 33 at 4. FPI participates in the Small Business Administration's ("SBA's") § 8(a) Business Development Program ("§ 8(a) program"), which awards federal government contracts on a preferential basis to businesses with disadvantaged owners. *Id.* at 5.

From December 2010 until April 2012, the Plaintiff, Elizabeth Rassi ("Rassi"), was the senior accountant for FPI and PINE. ECF No. 30 at 1. Rassi alleges that in the course of her employment, she complained multiple times to officers and managers of FPI and PINE about instances of illegal conduct involving the performance of FPI's § 8(a) contracts. *Id.* at 3. For example, Rassi alleges that she complained that FPI had misrepresented to the federal government that it was performing the mandated amount of direct labor under its contracts as required by the § 8(a) program, when in fact it was not. *Id.* She also alleges that she complained about the payment of alleged kickbacks by FPI to consultants and subcontractors. *Id.*

Rassi claims that as a result of her complaints to PINE and FPI management, she was subjected to retaliation and harassment in violation of the False Claims Act, 31 U.S.C. § 3730(h). ECF No. 30 at 5-6. She also claims that she was excluded from pay increases and promotions, and was disparaged by co-workers and managers on account of her race as a non-Indian, in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et. seq. *Id.* at 7.

PINE and FPI have moved to dismiss Rassi's complaint without prejudice pursuant to Federal Rule of Civil Procedure 12(b)(1). ECF No. 33. Alternatively, the defendants request, pursuant to the tribal exhaustion doctrine, a stay of the case to allow the Penobscot Nation Tribal Court to determine whether it has jurisdiction over Rassi's claims, and, if so, to adjudicate those claims. *Id.* at 12-13. Rassi opposes the motion with regard to FPI, but agrees that any claims against PINE should be dismissed without prejudice. ECF No. 34 at 1, n.1.

## II. LEGAL ANALYSIS

When a party to a case pending in a federal court asserts that a tribal court has primary jurisdiction pursuant to the tribal exhaustion doctrine, the court must first address the issue of whether that party enjoys tribal sovereign immunity. *See Ninigret Dev. Corp. v. Narragansett Indian Wetuomuck Housing Authority*, 207 F.3d 21, 28 (1st Cir. 2000). Because Rassi acknowledges that the claims against PINE should be dismissed without prejudice, the question at issue here is whether the sovereign immunity of the Penobscot Indian Nation extends to FPI as a wholly-owned subsidiary of PINE.

### A. Sovereign Immunity

Tribal sovereign immunity "predates the birth of the Republic," and "rests on the status of Indian tribes as autonomous political entities, retaining their original natural rights with regard to self-governance." *Ninigret*, 207 F.3d at 29 (*quoting Rhode Island v. Narragansett Indian Tribe*, 19 F.3d 685, 694 (1st Cir. 1994)). "Generally speaking, the doctrine of tribal sovereign immunity precludes a suit

3

against an Indian tribe except in instances in which Congress has abrogated that immunity or the tribe has foregone it." *Id.* (*citing Kiowa Tribe v. Manufacturing Techs.*, 523 U.S. 751, 754 (1998)).

Rassi argues that FPI does not enjoy sovereign immunity because it is a separate legal entity from the Penobscot Indian Nation by virtue of its status as a Maine limited liability company ("LLC"). ECF No. 34 at 3. The centerpiece of her argument on this point is the Tenth Circuit Court of Appeals' opinion in *Somerlott v. Cherokee Nation Distribs., Inc.*, 686 F.3d 1144, 1150 (10th Cir. 2012), in which the court concluded that corporations organized by a federally-recognized tribe under state law are "a separate legal entity organized under the laws of another sovereign [rather than the tribe] . . . [and therefore] cannot share in the [tribe's] immunity from suit." ECF No. 34 at 4 (*quoting Somerlott* at 1150) (internal quotation marks omitted).

FPI counters that *Somerlott's* discussion of sovereign immunity is dicta, noting that the Tenth Circuit ultimately decided not to reverse the district court's finding of sovereign immunity because the appellant did not properly preserve the issue for appeal. ECF No. 35 at 4 (*citing Somerlott* at 1151-52). FPI also cites to decisions that stand for the proposition that a subsidiary company formed under state law by an entity imbued with tribal sovereign immunity (such as PINE) does not necessarily lack sovereign immunity. ECF No. 35 at 2 (*citing J.L. Ward Assocs., Inc. v. Great Plains Tribal Chairmen's Health Board*, 842 F.Supp.2d 1163, 1176 (D.S.D. 2012); *Pink v. Modoc Indian Health Project, Inc.*, 157 F.3d 1185, 1188-89 (9th Cir. 1998); *Ransom v. St. Regis Mohawk Educ. and Community Fund, Inc.*, 86 N.Y.2d 553, 563

4

(N.Y. 1995)). For reasons I will explain, I am not persuaded that FPI lacks sovereign immunity as a consequence of its status as a Maine LLC.

First, FPI is correct to note that the Tenth Circuit's discussion of sovereign immunity in *Somerlott* was dicta.[1] More importantly, the analysis in *Somerlott* relies on a line of cases which hold that sovereign immunity does not extend to companies which were owned by the federal government but incorporated as distinct legal entities. *Somerlott*, 686 F.3d at 1150 (*citing Bank of the United States v. Planters' Bank of Ga.*, 22 U.S. 904, 907-08 (1824) ("[w]hen the United States enters into commercial business it abandons its sovereign capacity and is to be treated like any other corporation.") (Marshall, C.J., writing); *Panama R. Co. v. Curran*, 256 F. 768, 771-72 (5th Cir. 1919). The Tenth Circuit cited these cases to support its conclusion (albeit as dicta) that an Indian tribe cannot enjoy greater sovereign immunity than the United States—i.e., that if a corporation owned by the United States did not enjoy sovereign immunity, then neither could a corporation owned by an Indian tribe. *Somerlott* at 1150.

These cases are distinguishable from the circumstances surrounding the formation of FPI. The Penobscot Indian Nation formed PINE and, in turn, FPI, to advance its governmental objectives of creating employment opportunities on the Penobscot reservation and to generate income for the Penobscot Nation, in lieu of a tax base, by participating in the SBA's § 8(a) program. ECF No. 35 at 3. Furthermore,

---

[1] The other case which Rassi cites to argue against FPI's sovereign immunity is *Eaglesun Systems Products, Inc. v. Association of Village Council Presidents*, 2014 WL 1119726 (N.D.Okla., Mar. 20, 2014), which is dissimilar to this case because the tribally-owned corporate defendant was neither an IRA § 17 corporation nor a subsidiary of one.

5

when it created FPI, PINE appointed FPI's entire (three to five-seat) board of directors and permanently reserved for itself seats on the board for at least two of its own board members. *Id.* at 3-4. These facts make this case far more analogous to the circumstances present in *Lebron v. National R.R. Passenger Corp.*, 513 U.S. 374 (1995), in which the Court held that "where, as here, the Government creates a corporation by special law, for the furtherance of governmental objectives, and retains for itself permanent authority to appoint a majority of the directors of that corporation, the corporation is part of the Government." *Lebron*, 513 U.S. at 399.

**B.    Waiver of Sovereign Immunity**

Having concluded that the Penobscot Nation's sovereign immunity extends to FPI, I also conclude that FPI waived that sovereign immunity by participating in the SBA's § 8(a) program.

To be eligible to participate in the § 8(a) program, a company that is owned by an eligible Indian tribe must adopt as part of its articles of organization "express sovereign immunity waiver language, or a 'sue and be sued' clause which designates United States Federal Courts to be among the courts of competent jurisdiction for all matters relating to SBA's programs, including, but not limited to, 8(a) BD program participation, loans, and contract performance." 13 C.F.R. § 124.109(c)(1). FPI's Operating Agreement contains the required "sue and be sued" clause.[2] FPI contends

---

[2] The FPI Operating Agreement, § 12.07, reads:

> The Company [i.e., FPI] may sue and be sued in any of the United States Federal Courts, which are hereby designated to be among the courts of competent jurisdiction, for all matters relating to SBA's program, including, but not limited to, 8(a) program participation, loans, and contract performance . . . . This waiver is granted solely for

6

that the clause does not waive FPI's sovereign immunity from suit for claims under the False Claims Act or Title VII because it applies only "to effectuate enforcement of loans and contracts related to the section 8(a) program." ECF No. 35 at 5-6 (*citing Graham v. Applied Geo Techs., Inc.*, 593 F.Supp.2d 915, 921 (S.D. Miss. 2008)).

FPI's reading of the "sue and be sued" clause is simply too narrow to comport with the broad language of § 124.109(c)(1). The regulation's requirement of federal jurisdiction over "all matters relating to . . . program participation" is sufficiently broad to encompass Rassi's claim of retaliation under the False Claims Act because it is a "matter" which relates to FPI's "program participation," i.e., its performance of its § 8(a) contracts. *See Ninigret*, 207 F.3d at 31 (contractual forum selection clause was "nose-on-the-face plain" where it committed "all claims, disputes, *and other matters* . . . arising out of or relating to the contract" to arbitration; the waiver of tribal sovereign immunity in that instance was "direct, clear, and unavoidable.") (emphasis added).

For the same reason, I also conclude that the sue and be sued requirement of § 124.109(c)(1) encompasses Rassi's racial discrimination claim as a "matter" which relates to FPI's "program participation" insofar as FPI is alleged to have violated SBA anti-discrimination regulations in the performance of its § 8(a) contracts. 13 C.F.R. §§ 112.4, 112.7. I am not persuaded by FPI's assertion made at the hearing that the

---

the purposes required by 13 CFR § 124.109(c)(1), and shall not be interpreted to grant any rights to parties other than those intended by this regulation.

ECF No. 35 at 5.

7

SBA's anti-discrimination regulations do not apply to Indian tribes, and that they are merely funding requirements which allow the SBA to "pull funds," or terminate a tribe's eligibility for SBA program participation, without creating a private cause of action for discriminatory acts. The operative clause in § 124.109(c)(1) is a "sue and be sued" clause, not a "pull or don't pull funds" clause. Consequently, I conclude that FPI has waived its tribal sovereign immunity by virtue of the "sue and be sued" clauses in §12.07 of its Operating Agreement and in § 124.109(c)(1) of the SBA's regulations.

**C.    Tribal Exhaustion Doctrine**

"The tribal exhaustion doctrine holds that when a colorable claim of tribal court jurisdiction has been asserted, a federal court may (and ordinarily should) give the tribal court precedence and afford it a full and fair opportunity to determine the extent of its own jurisdiction over a particular claim or set of claims." *Ninigret,* 207 F.3d at 31 (*citing El Paso Natural Gas Co. v. Neztsosie,* 526 U.S. 473, 483 (1999)). "[The doctrine] is not jurisdictional in nature, but, rather, is a product of comity and related considerations." *Id.* (*citing Iowa Mut. Ins. Co. v. LaPlante,* 480 U.S. 9, 16 n.8 (1987)). Although the tribal exhaustion doctrine does not apply "mechanistically" to every claim brought by or against an Indian tribe, "[c]ivil disputes arising out of the activities of non-Indians on reservation lands almost always require exhaustion if they involve the tribe." *Id.* at 32 (*citing Iowa Mut.,* 480 U.S. at 18).

Rassi argues that exhaustion "is but a corollary to tribal sovereignty," and that FPI's waiver of tribal sovereign immunity and consent to federal jurisdiction renders

8

exhaustion both unnecessary and inappropriate. ECF No. 34 at 9. Yet this argument ignores the fact that the tribal exhaustion doctrine is not jurisdictional in nature, but is a matter of comity. *Ninigret* at 31. It also runs counter to the First Circuit's conclusion in *Ninigret* that "if a tribe has not explicitly waived exhaustion, courts lack discretion to relieve its litigation adversary of the duty of exhausting tribal remedies before proceeding in a federal forum." *Id.*

Based upon the record before me, I conclude that, as a matter of comity, the tribal court should have the opportunity to determine the extent of its own jurisdiction in this case and, if it determines that it has jurisdiction, to adjudicate the merits of Rassi's claims. *See id.* at 35 ("as a matter of comity, it is for the tribal court, in the first instance, (a) to determine the contours of its own jurisdiction . . . and if it determines that it has the authority to proceed, (b) to effectuate its jurisdictional determination by adjudicating the merits of the appellant's claims.").

### III. CONCLUSION

I conclude that the sovereign immunity of the Penobscot Indian Nation does extend to FPI, but that FPI waived its immunity by adopting the "sue and be sued clause" in § 12.07 of its Operating Agreement, as required by 13 C.F.R. § 124.109(c)(1) in order for FPI to participate I the § 8(a) program. Nevertheless, I conclude that the tribal exhaustion doctrine applies to this case. The case is ORDERED **STAYED** with regard to FPI pending a determination by the tribal court as to its jurisdiction, and if necessary, an adjudication of the case on its merits. After the tribal court has ruled on the issue of its jurisdiction, and, if necessary, adjudicated the case on the merits,

9

either party may return to this court and request that the stay be lifted.  It is further

ORDERED that all claims against PINE are **DISMISSED,** without prejudice.

**SO ORDERED.**

This 25th day of November, 2014.

                                                                /s/ Jon D. Levy
                                         **UNITED STATES DISTRICT JUDGE**